The appellate court of Illinois is now in session. Thank you. You may be seated. Good morning ladies and gentlemen. First case this morning is our number 413-0903. People of the state of Illinois v. Daniel Flick. For the appellant is Gavin Dow. You are he, sir? For the appellee is David Robinson. Okay, Mr. Dow, you may proceed. Good morning, your honors. Good morning. May it please the court, I'm Gavin Dow. I'm from the Office of the State Appellate Defender and I represent the appellant in this case, Mr. Daniel Flick. On page 25 of its brief, the state concedes that Mr. Flick was not eligible for drug court and that the trial court's order putting him there was void. That concession ends this case. Because the trial court's order was void, the trial court's subsequent orders removing Mr. Flick from drug court and sentencing him to 12 years were also void. Similarly, because Mr. Flick was not eligible for drug court, the plea agreement by which he pled guilty in exchange for placement in drug court was void too. Furthermore, it's impossible to reform the plea agreement in this case. Mr. Flick remains ineligible for drug court due to his background and since that's the only term of the plea bargain, there's nothing the court can do to put the parties back. The only option is for this court to do what the Illinois Supreme Court did in People v. White, what the appellate court did in People v. Johnson. Was this a negotiated plea? It was a negotiated plea in the sense that Mr. Flick agreed to plead guilty in exchange for placement into drug court. For purposes of Supreme Court rule, was it a negotiated plea? For the purposes of Supreme Court Rule 604D, I'm not sure that it was. And the reason for that, Your Honor, is there was no sentence. That 12-year sentence wasn't a part of the plea agreement. It was something... So the state made no concessions? As with regard to the ultimate sentence at the end, I think that's correct, Your Honor. All right, thank you. Okay. Would it be correct to say that neither the attorneys, prosecutor, defense attorney, or the court realized that at the time the defendant entered into this guilty plea that he was not eligible for drug court? I think that that would be correct, Your Honor. But they both... Everyone thought he was eligible and he would be a good candidate to participate in drug court? I believe so. At the time he pled guilty, he was charged with a Class X offense? That's correct. Is that what he also pled guilty to? Yes, Your Honor. What was... What was he hoping to achieve by his guilty plea? What he was hoping to achieve by his agreement was to be placed in a drug court. The problem is that the trial court's order putting him there was... Well, let me back off. I don't think I was sufficiently clear. By being placed in drug court, what did he hope to achieve by that? What did he hope to achieve by being placed in drug court? I'm sure that he hoped to achieve ultimately the disposition of the case. Well, can you be more precise? In other words, when he got into... He was admitted to the drug court. Let's assume he successfully completed. What did he hope to achieve as a result of the successful completion? I believe at that point what was going to happen was that the case would have been discharged and it would have been done. Why do you think that? That's based on the relatively thin that seems to be what it was that the parties were contemplating. Well, did the prosecutor ever said, say, if you successfully complete this, he would dismiss the case? I believe that that was what was going to happen, yes. Oh, I looked at the Record Council. I don't think the record contains any such representation. As a matter of fact, what does the order signed by the judge that the defendant signed and the attorney signed say about what would happen if he successfully completed drug court? Are you talking about the the drug court agreement, your honor? The drug court order signed by the court explaining what the consequences would be, what the results would be of the defendant's successful completion of drug court. Well, maybe I might be missing something, your honor. I believed that what was happening was that if he successfully completed drug court that the case would be discharged. Why do you think? Well, the first question is, does the statute require that, the drug court statute? Does the statute require the discharge of the? Yes. No, I don't believe it does. And to be more clear about what I'm asking about, if you put on probation and you successfully complete probation, the act requires that the sentence be over. On probation, yes. Yes. And there are several other sentencing's, 1410 probation, there's other probation's where if you successfully complete it, case is discharged, you're over. The Drug Court Act doesn't say that. The drug court says if the defendant, the act says if the defendant successfully completes it, the trial court may, being the operative word, dismiss the original charges against the defendant or successfully terminate the defendant's sentence or otherwise discharge him or her from further proceedings against him or her in the original prosecution. Meaning that that's possible, but there's no guarantee of it as there is in all the other consequences. Under the drug court statute? Yes. Yes. But more specifically in this case, there's a written agreement the defendant signed that was entered by the judge setting forth what the guilty plea agreement was and focusing on specifically what if he successfully completes it. This is what the plea agreement in the order of the court says. I understand that upon successful completion of the drug program, my case will be set for sentencing and successful completion of drug court shall be viewed as a mitigating factor in sentencing. In other words, there's no hint that this case would be discharged as it would be in a normal probation. Doesn't that change the circumstances here? Well, Your Honor, I don't think that it does. And the reason that I the essence of the plea agreement was for Mr. Flick to go to drug court. And everybody participates in the drug court program. I'm sorry? To participate. In other words, here's the essence of the plea agreement as I read it based upon this. Mr. Flick, you're going to be given an opportunity to participate in the drug court program to demonstrate to the court that you're a different kind of guy now than you were when you first pled guilty and you've had all this drug trouble and committed this serious offense, class X drug offense. And our only promise to you is if you do this well, and by the way, one of the other benefits he got is he was released from jail. He's sitting in jail in a class X bond. He was released from jail to participate in drug court for the promises up to 36 months. If you do this well, our promise to you is it shall be viewed as a mitigating factor in your case. So, even though he wasn't eligible for drug court, technically, didn't he have, wasn't he afforded the benefits of it, in fact, because he was never promised the case would be discharged. Well, once again, I don't think it matters because the drug court order was void. But further beyond that, Your Honor, part of the sentence here... Why was it void? It was void because he was not eligible to be in drug court under the Drug Court Treatment Act. Well, he, you're right, he's not, he shouldn't officially been there, but if I'm the trial judge and you're a defense counsel at the trial level, Mr. Robinson is the prosecutor at the trial level, what about this as a possibility? Couldn't you have come to me and said, you know, Judge, assuming you were aware that he's got this prior aggravated battery causing great bodily harm conviction that rendered him technically ineligible under the statute? You know, Judge, we think this guy is not eligible for drug court, but he's convinced me and we're both convinced that he should be given another opportunity and to demonstrate that he's better now than he's been in the past. So, how about our agreement to reduce him, reduce his bond, let him out of the bond after he pleads guilty. He's going to plead guilty to this case and we'll give him an opportunity, just as if he were in drug court, to participate in programs for the next three years and demonstrate his compliance with all of the things we want him to do so that when it comes time for sentencing on a six to thirty sentencing range, he could argue, Mr. Darrell could argue for the minimal sentence based upon what he's demonstrated. Couldn't the court say, sure, I'm gonna take a guilty plea and reduce your bond to five thousand bucks and let you out? That would be a very unusual thing, I think, for the court to do. Well, the question isn't what would be unusual, there's no reason the court couldn't do that, is there, if the parties suggested it and agreed to it as here? Your Honor, I don't know the answer to that question, but what I do know is that that's not what the court did here, because what the court did here was enter him into the drug court program. Did the trial judge, did he indicate that the defendant was going to be entered into a drug court program that was compliant with the Drug Court Treatment Act? I'm very curious about the drug court program itself that is referenced in this case. Here, the defendant pled guilty, but sentencing was deferred. The Drug Court Treatment Act really contemplates two different scenarios. Either a deferred prosecution, where the prosecution stays the charge while the individual goes through a rehabilitation program, or the defendant pleads guilty or is found guilty and is sentenced, and the sentence is to drug court probation. In the Drug Court Treatment Act, those two different scenarios are either a drug court program or a post-adjudicatory drug court program. Here, the defendant was convicted via plea agreement, but was not sentenced. So really, we have some hybrid where the defendant was operating under some conditions, and maybe there were conditions of bond, but this program, as I read it, doesn't fit into either category here. So what would prevent the trial court from simply doing what Judge Steigman was referring to earlier and enter various conditions of bond that would replicate what might be done in drug court, and that necessarily would not result in a void order? Well, once again, Your Honor, I'm not sure what might or might not prevent that. It's not an issue, obviously, that's discussed in the briefs, but it remains the case that that's not what the trial court did here, because the trial court did purport to put him into a drug court program. I think it was attempting to put him into a post-adjudicatory program, Your Honor. The post-adjudicatory would involve a sentence that had previously been entered, and when you read through this, this is where I'm just not sure what happened here. The state moved to reinstate criminal proceedings, but the criminal proceedings were already in place, were they not? Well, yeah, the reason I think it's a post-adjudicatory program is I think that parties reviewing drug court is the sentence, and when they decide, the state decided to move to reinstate criminal proceedings, what they were doing is akin to a violation of because Mr. Flick was purportedly in drug court. Well, those two aren't mutually exclusive here. Drug court typically involves probation in the post-adjudicatory program, so an individual is sentenced to drug court probation. Then, if during the course of the period of time the individual's in drug court, he or she violates the conditions of that drug court probation, then they, the prosecutor, can go in and move to reinstate criminal proceedings and there would be a petition to revoke the drug court probation, but that's not what happened here. It's a very unusual footing here that we're on. I would agree with that. It is unusual. By the way, Mr. Dowell, before I forget, I wanted, I note in your reply brief, you had mentioned the Young and Medrano cases, which you indicated are arguably against your position and you went on to distinguish them, and I wanted to commend you because I think that's a very professional way to handle it, to cite cases that we might very well come across anyway and to not wait and see if we do, but as a professional advocate, to cite them, pointed out that this is contrary case law, arguably, and then to attempt to distinguish them. We don't always see that and it was the right way to handle it, so I wanted to commend you for doing it. Thank you, Your Honor. Going back to the questions raised here, looking to the Hughes case and following Santabello case, the Illinois Supreme Court following the U.S. Supreme Court has said that the principal inquiry concerning plea agreements with this contract framework, which we're now using, is whether the if drug court were a situation where, at the end of drug court, the deal like probation is you're going to be discharged if you succeed, then he didn't receive the benefit of his bargain because he never was eligible to get that benefit. That's something that couldn't have happened, but here the question is why didn't he receive the benefit of his bargain where his only promise was, we're gonna let you out for two to three years. We'll give you an opportunity to demonstrate you're now a better guy because there is, after all, this 24-year range from six to thirty years of the crime to which he pled guilty, and if you demonstrate it, then you can argue for the minimal sentence, as the court said, and he signed and said on successful completion, my case will be set for sentencing and successful completion of drug court shall be viewed as a mitigating factor in sentencing. To put it another way, had he done a wonderful job for these three years and had this case come up for sentencing and the court said, well based upon this I'm now going to impose the 12 years which he got, big change. Could you still make the same argument, could you still make the same argument after the fact that, gee, this is all void given his plea back? I think so, Your Honor. Why? There are two reasons. Under those circumstances, why wouldn't he have received the benefit of his bargain? There are two reasons for that, Your Honor. The first thing I want to point out is one of the reasons that Mr. Flick received a 12-year sentence in this case was for his conduct in drug court. The judge considered that at sentencing as an aggravating factor, Your Honor. Well, but of course that's because he screwed up. Of course. And in my hypothetical, what if he was a prince? He did everything just right. He was wonderful. And comes time for sentencing, he now gets six years. Is he still, is it still all void? Is it still, wouldn't he have received, had he done it right, wouldn't he have received the benefit of his bargain? The problem is that he couldn't receive the benefit of his bargain because he couldn't be put into drug court in the first place. But he had been put into, this is my whole point. Let's go back, let's assume he, everything happened just as it did, but the only change they're making is three years on, he's now, you know, candidate for the sainthood. He's done everything just wonderfully. He's drug-free. He's been terrific serving the poor at soup kitchens. I mean, got a job supporting his family. He's done a wonderful job. And the judge says, gee, I'm very impressed and I'm now going to impose the minimum sentence as opposed to a greater sentence that would have been the case. Wouldn't he have gotten then the benefit of his bargain? And he wasn't, whether he got the benefit of the bargain in his own hands. By the way, I've got to sign you only two minutes, your first part, of course, have a chance to address this again. But in the hypothetical, wouldn't he have gotten the benefit of the bargain? You know, I suppose so. But once again, that's not what happened here. Because what happened here is he went, the court put him into drug court. Legally, that wasn't available. Are you arguing that if he had successfully completed drug court, there would never have been a sentencing hearing? Is that what your argument is? Based on the facts of the case? Well, yeah. That was my understanding of what the agreement was. It's clear that that's not an understanding that your honors all share. So, the court didn't say that if you successfully complete drug court, I will consider that as a mitigating factor at sentencing? Did the trial court say that? I believe that that's part of the drug court agreement. It says that in the... Actually, it is. And to answer the question, the court never actually addressed this other than to say, you're gonna be in the drug court program. The court didn't talk at the time he pled guilty about what the consequences would be, other than the written order that was entered. And the fact that the statute, everyone seemed to understand what the drug court program meant. Namely, you got a chance to show us your changed guy and participate in all this. But there is, it may, and the other thing is this, the statute does say may. So, part of the problem may be that perhaps the defendant and his counsel were hoping that the prosecutor, if he turned into a real prince over three years, would do the right thing and say, Judge, we don't have to send this guy to prison at all. We should just flush this case out. He's had a chance to demonstrate what a changed character he is, etc. And maybe that was the hope, but it was an unarticulated hope. No one promised it. No one suggested it. No one mentioned any such hope. The only mention was it will be a mitigating factor at sentencing. Your time's up now. This, these are some questions we've asked you about this that we still might have some further questions about it during the course of the state's presentation. You can think further about it and what additional thoughts you'll have to speak to us on rebuttal. Thank you, Your Honor. Okay, Mr. Robinson. Please the court. Counsel. Counsel. This is a case about a defendant who received an additional benefit as part of his bargain with the state. He should be stopped from challenging it. Although a beneficial provision of defendant's agreement with the state was unauthorized, his ultimate sentence 12 years as a class X offender was appropriate. Because defendant's ultimate sentence is not void and he failed to file a motion to withdraw plea or reconsider sentence under Rule 604 D, after being fully admonished under Rule 605, this court should dismiss defendant's appeal. I'll turn first to defendant's plea agreement argument. Defendant was not eligible for drug court under Section 20 B four of the Drug Court Act. Um, there's little question about that. However, Justice Steigman asked the following question. What did he hope to achieve in this case? I don't have to guess. It's in writing. Paragraph four of the Coles County Drug Court Participant Agreement Track to guilty plea admission of P. T. R. And this will go to Justice Harris's inquiry about what track this drug court took in this case. Defendant signed the following agreement. The judge entered it as an order which the state concedes in form is void. I understand that upon successful completion of drug court program, my case will be set for sentencing and successful completion of drug court shall be viewed as a mitigating factor at sentencing. That's the benefit of his bargain. Justice Steigman further noted earlier during the defense presentation that, in fact, the defendant got the benefit of his bargain. And isn't that what the Supreme Court talks about when they cite the U. S. Supreme Court when we're dealing with cases involving plea agreements? That's true. I like to stay closer to home. Justice Turner wrote in People versus Gregory in 2000 and eight that plea agreements may only be withdrawn when there's a quote unquote significant deviation, as Justice Turner wrote from the agreement and the promises made by the state. Not only was there not a significant deviation in this case, like the Supreme Court case in Donaldson, the defendant got everything he was entitled to and more. Let me ask you this, Mr Robinson. Could in this case, could the defendant have completed the drug court program? And I'm gonna put quotes around all of that completion of the drug court program because it says the drug court program would be for a period of 36 months. Let's say he goes through the 36 months, doesn't have a black mark on his record during that period of time. It ranges 60 to 30 years sentencing sentences him to 30 years. Could he have done that? Absolutely. It's within a sentencing range. And as part of the agreement, what he was promised, because at this point we're working in a world of legal fictions because he was not entitled to it. One of the things that we discussed in working this case up was the idea of um, we understand that he got the benefit of his bargain in this case, and it's somewhat problematic that well, you know, he did get sentenced under this. The sentence was appropriate. But my goodness, it sure seems like the court considered some of this an aggravation. And Mr Dow brought that up in the opening, and that seems problematic at first blush. But in fact, this is totally appropriate. Uh, let's say, for example, in an extreme case where the defendant gets this track to probation, I'm sorry, track to drug court program, and he's not technically eligible for it under the statute as we have here. But while on that drug court release as part of the bond, not as a probationary term, he commits an armed robbery. He's found with additional methamphetamine. Is the court not permitted to consider that? Of course the court consider that. The court can consider anything the defendant has done in his life prior to sentencing, as long as it's not contrary to Supreme Court rule or statute. And here, had the defendant engaged in some sort of other criminal conduct, the court could unquestionably have considered that. Similarly, here, the defendant received a benefit to which he was not entitled. It was a gift. He got an extra opportunity. Over two years, the state expended enormous amounts of time, effort and money to permit him this benefit that he was not entitled to, and he squandered it. The court was absolutely correct in, uh, not only considering that, but folding it in and saying, you know, this is an aggravating factor. Nevertheless, Your Honor, unlike your hypothetical, the defendant, who in this case was a Class X felon for essentially possessing and working a motel methamphetamine lab, got 12 years in a 6 to 30 range with 400 plus days for credit for time spent in custody during that void term of drug court. And importantly, what Judge Steigman pointed out, he got out of jail. Correct. So that appears in retrospect to have been the primary benefit, this fellow. That's right. And moreover, to Justice Steigman's point earlier, Section 35B of the Drug Court Act itself says, regardless of the track, the trial judge is not bound for purposes of sentencing by the drug court agreement insofar as dropping the charges. The Section 35B specifically says, upon completion of the terms of the conditions of the program, the court may dismiss the original charges against the defendant. Shouldn't this court be somewhat concerned by the fact that apparently no one in Coles County realized that the defendant wasn't technically eligible for this program, that the prosecutor, experienced defense attorney, experienced trial judge said, yeah, let's put him in the drug court. And how should we handle that? I think I'll surprise you, Your Honor. I don't think you should. This case is sui generis for a reason. Most judges and attorneys are fluent in the drug court. It's a relatively new program. They try to use it. In Coles County, in this case, they have a two track program, which goes to Justice Harris's point. It gets complicated because it can take a bifurcated path. In this case, the defendant was not eligible because of a 2003 aggravated battery causing great bodily harm. It's my belief that, in fact, counsel and the judge in this case merely thought that that was an aggravated battery. In reviewing the record, the charges that the defendant had previously been convicted of were written, were handwritten. And my recollection is that there was not a great bodily harm add on. Well, the problem is, it's supposed to be a bad joke to say, as a last resort, let's look into the statute. And here it appears, since it specifically provides that someone convicted of aggravated battery causing great bodily harm in the statute, which isn't all that big, is not eligible for drug court participation, it wouldn't require study of nuances to figure out, this guy's not eligible. It wouldn't. And I assure you that the Coles County State Attorney's Office is aware of that. Well, that's good. By the way... Go ahead, John. Justice Harris asked you about a 30 year sentence. Let's assume that's what happened in this case. And he's not happy with this 30 year sentence. If he wanted to challenge that on appeal, would he first have to file a motion to vacate his guilty plea? That sort of leads into the second argument, Your Honor. I believe he would. What if the motion to vacate guilty plea were denied? Would he then be permitted to raise the issue on appeal of the propriety of the sentence? He would. I think I know where you're going, Your Honor. That would make this a non negotiated plea, then, correct? That's correct. And Justice Turner brought this point up at the beginning. It doesn't matter for purposes of this case, but as an intellectual exercise, I will point out that neither was filed here. But in this case, I think what we have to stay focused on is, I think the state was a little misleading in its heading and conclusion in its brief to this court that we use jurisdiction with a small J. It's not a question of jurisdiction. As the defendant points out, and the state acknowledges, and this court well knows, a defendant can challenge a sentence as void at any time. We have no quibble with that. Essentially, we were using jurisdiction with a small J to say, you shouldn't review this under Rule 604D because the defendant hasn't filed the necessary documents. But going back to what you mentioned earlier, that's why I also want to get back to Rule 605. You mentioned that the trial court admonished the defendant under 605 and no 604D was filed and no post trial motion was filed. Given the astonishing discussion between the court and counsel, didn't the trial court undercut its own admonition? In other words, here's the court talking to defense counsel, they wish for me... This is immediately after sentencing and the admonitions. They wish for me to have the circuit clerk file a notice of appeal and appoint the appellate defender's son. Please. Okay, so order. Your Honor, do I have to file a motion to reconsider the sentence? I get so confused about this. And then the court says, if there is error in the sentencing hearing, I suppose, I think you can attack the sentence itself on appeal. Defense counsel says, well, go ahead and appoint the appellate defender. If they think we're premature, God knows they are not shy. Well, given this dialogue, can you really say that the defendant understood or is chargeable with understanding that he's gotta take action, like to move to vacate his guilty plea if he wants to raise this on appeal? Hasn't the court in this dialogue essentially undercut the 605 admonitions it had just given? Absolutely not. Let me walk through it line by line, Your Honor. And I'm glad you read it for purposes of the students that are here today. The first three sentences, Miss Garrett, defense counsel, do you wish for me to have the circuit clerk file a notice of appeal and for me to appoint the appellate defender's office this time? Please, Your Honor. So order. No problem here. There's no rule that says if a defendant is satisfied, as I believe they were in this case with the ultimate sentence, 12 years with all the time served, day for day credit on a Class X methamphetamine possession charge.  Or withdraw their plea if they don't want to do that. But what were they appointing the appellate defender for and what was to be appealed at this point? Good question, Your Honor. As defendant points out and the state concedes, a void sentence is always appealable. But no one knew at this point. You're right. No one knew anything about a void sentence. That's absolutely true, Judge. But as you know, this is always the case. This is why we have a defendant's right to appeal in this state. Learned defense counsel, learned prosecutors, learned trial judges make mistakes. The appellate defender is appointed to review those cases where, for example, perhaps a statutory sentencing range had been changed but the trial judge was unaware. But doesn't this argument suggest that in the absence of a post-trial motion before filing a notice of appeal, the only, as good as they do a wonderful job, but as good as they are, the only issue they are entitled to raise is if they discover there's an argument this sentence was void. Other than that, what can they raise? Arguments related to ineffective assistance of counsel, other constitutional claims. In any event, I'd like to go through this but the proof isn't the pudding here because the reason why this wasn't ultimately a jurisdictional issue is because learned counsel from the Appellate Defender's Office actually filed an amended notice of appeal to keep this thing going and under People v. Hood that's sort of the distinguishing jurisdictional factor following Henry William M. But let me pick up on the next, if the court would indulge me, Mrs. Garrett, defense counsel then says, your honor, do I have to file a motion to reconsider? I get so confused about this. What counsel's saying here is we don't want to challenge the sentence. I know there are all these 604 D cases floating around, there's all this craziness involved in this. Do I still have to file as a perfunctory matter a motion to reconsider sentence? I get confused about that. The judge says, look if there's an error in sentencing, I suppose you do, I think you can attack the sentence itself on appeal and the judge is right. If it's a void sentence you can attack it on appeal. Mrs. Garrett, well go ahead and appoint the Appellate Defender. If they think we're premature, God knows they're not shy. The court, we'll let them know. All right, now I can see that the court finds this argument to ring a little hollow. I believe that's what happened here but you don't have to take my word for it. The United States, the Illinois Supreme Court in People v. Wilk discussing an issue, this is a case that defense counsel cited for a proposition, in the 604 D context said that if your concerns regarding this exchange need be assuaged, the appropriate, this is a quote, the appropriate remedy lies in our Post-Conviction Hearing Act. So in other words, if you don't accept my reading of this and you think it's more likely that defense counsel's reading of this is appropriate, let's say it's 99% him, 1% me, this is still better raised in a post-conviction petition. Going back to Justice Turner's question a moment ago about this negotiated guilty plea, if in fact the defendant were eligible for drug court technically, which everyone at the time thought he was, wouldn't the state's agreement to have him participate and essentially release him from jail for his participation where he'd been sitting for, I think, eight months at this point as part of the plea agreement, wouldn't that constitute some promise or benefit conferred by the state pursuant to the plea agreement so as to constitute a negotiated guilty plea? It could, Your Honor. There are a number of concessions that the state made and I alluded earlier to this time, expense, effort that they put into doing everything possible to get this individual back to a place in his life where he could take care of his children, provide for himself, provide for his family. Despite repeated efforts, they were unable to do that. If it were a negotiated guilty plea, if he wanted to appeal any of this, he'd have to file a motion to vacate guilty plea and then proceed accordingly, wouldn't he? I think that he would, Your Honor. If we agree with you that the conviction is not void, the sentence is not void for the reasons you're arguing, why shouldn't we give him the opportunity to go back and get a new 605 admonition and do it right and see whether he wishes to, in fact, move the sentence? Two reasons. One, he doesn't want that. Well, we don't know. We actually, he's arguing set it all aside, but as an alternative, I think, hasn't the defense raised the failure to comply with 604 D here as an alternative argument? Respectfully, Your Honor, he did. He had the opportunity to file that and I believe that that exchange with the trial judge reveals defense counsel did not want to challenge that. They were satisfied in a 6 to 30 range for a class X sentence with a 12-year sentence with the credit for time served day for day. The second part, though, to your point, those issues can be addressed in defendants, what will surely follow, defendants petition under the Post Conviction Hearing Act, wherein he can call counsel and, if necessary, the trial judge, read this statement to them and say, what did you mean by this? Were you confused about your obligations? Despite, despite having just admonished the defendant under Rule 605 in open court in front of counsel, who handles these cases regularly, it is difficult for me to believe that counsel and the trial judge were both confused about what defense counsel had to do. You may be that the defendant doesn't want to challenge his 12-year sentence, but how can it hurt to give him the opportunity to demonstrate if that's the case and say, go back and, because if he files a motion, if we authorize that and he goes back and files a motion to vacate, trial court's under an obligation to grant it. And then he can decide, well, he first can decide does he want to do that because he's on a 6 to 30-year sentence. Who knows what's happened, and your argument is correct. The court, at sentencing, can consider everything that's happened. Maybe he hasn't been such a good prisoner in this interim. Or maybe he's been a great prisoner. Or maybe he's been a great prisoner, but the point is, does he want to put at risk the sentence he's got because he might be getting out sooner than later? And second, if he does, the court can decide whether he wants to grant it and, if not, then he'd be able to appeal the sentence, would he not? Judge, on this issue, the people will fall on their sword. We, we're happy as a matter of judicial grace for this court to dismiss this case with some instructions for the trial judge to allow defense counsel, if the defendant wishes, to file a motion to withdraw a plea or reconsider sentence. Before you run out of time, I wanted to ask you a question that, unfortunately for you, takes you, puts you back in the position of explaining the trial court proceedings here. Happy to do it. But prior to the sentencing, after defendant was in the trial court program, the state files a motion to reinstate criminal proceedings. And as I read the briefs, there are filings, defendant admits allegations contained within that motion to reinstate. What is the significance of all of this? What is happening? What if the defendant had denied the allegations? And when we have a guilty plea and a conviction and then we have a sentencing set, but in between we have some sort of hybrid procedure going on. What is this? Your time is up. We're anxious to hear your answer because it presumes that anyone knows what's going on in Coles County. They do. In fact, Your Honor, I think what they have going on in Coles County is what they call Track 1 and Track 2 drug court. I think what happened in, in this case was they were trying to put defendant on Track 2 drug court, which because of his criminal history, they were suspect of his ability to do it. So what they tried to do was say, we're gonna make this merely a mitigating factor sentence, go back under the Drug Court Act, reinstate charges. Frankly, in speaking personally over the last couple of days with the State's Attorney of Coles County, if they had this case to do over again, this would not be the way they handled it. Let me ask you this. That's comforting. Are these, is all of this explained in the record someplace? Is the drug court procedure that was developed by Coles County that this case was operating under in the record? It is in part, but my point in saying that I had those discussions with the State is that this did not go the way they have their tracks set up. So in other words, this case is sui generis in that regard. Well, this isn't an esoteric issue. My primary concern right now is trying to figure out, is this something that is governed by the Drug Court Treatment Act? Or, I understand your point, Your Honor. The reason that the State didn't push that issue and I didn't push it following your question earlier today was that it's a difficult position for the State to take when our agreement with the defendant cites the act. I felt like we were in a position where I can't disavow the act and say that this was just a drug program that he was in for fear that in front of this panel, I would be discussing that for 20 minutes. Thank you, counsel. Yes, you dismiss and otherwise affirm. Thank you. Rubato missed it out? Thank you, Your Honor. Okay. First of all, the agreement absolutely was for Mr. Flick be put in a drug court program. I think that that's clear. It's clear from the agreements, clear from what the parties were saying. So that is what they were trying to do. And under the Drug Court Treatment Act, they were not allowed to do that. We're talking a little bit throughout this case about didn't Mr. Flick get the benefit of his bargain. And the problem with that kind of an argument is that it gets past the idea that Mr. Flick could be in drug court as a legal matter. Now, as I said earlier, one of the things that happened at sentencing is that what happened when he was purportedly in drug court was used as an aggravating factor. But if we had followed the Drug Court Treatment Act in this case, I think that never would have happened. There would have been nothing there to aggravate his sentence to 12 years. I also wanted to clear up one other matter about Mr. Flick's actions during violated the agreement, that violated the terms of drug court. First of all, he never once tested positive for any drug. Second of all, he didn't commit any crimes. He didn't go out and commit an armed robbery. He didn't deal a drug. He didn't possess a drug. All of the violations were violations of the rules of the program. And those are absolutely violations, but it's not as though he was out causing mayhem. When he was on drug court. And I just wanted to make that clear. Now, as for the admonishment issue, which the state discussed during its argument, the truth is, you know, as we don't know what Mr. Flick and his attorney mayor may not have wanted to do because the trial court cut him off at the pass. Because right after reading the 605B admonishments, the trial court said, okay, do you want to file a notice of appeal? It was contrary to the admonishments. It contradicted what the trial court just said. And it's surprising to me that nobody at the hearing apparently recognized that, but that is what happened. And it's also abundantly clear that 10 seconds later, when the trial court was discussing whether you had to file a motion to reconsider the sentence before you could file an appeal, trial court flatly said, no, you don't have to. And that was wrong. That was exactly contrary to what the court had said just minutes before. So I think it's abundantly clear that Mr. Flick was misadmonished in this case. The state brought up the Wilk case. And in Wilk, it does say that a remedy for this kind of a problem might lie in the Post Conviction Hearing Act. Thing is, after Wilk, the state Supreme Court decided Foster. And in Foster, what it said is that misadmonishments, not giving the admonishments, that's kind of a procedural unfairness. You apply what is now called the admonition exception. You send the case back down to the trial court. You re-admonish the defendant, and then you give him the opportunity to comply with Rule 604D. So the Post Conviction Hearing Act is not the first reaction here. Two minutes. Well, I have nothing else, if your honors have no further questions. Thank you, counsel, for your presentation this morning. We'll be in recess. Thank you, Mr. Mander and your advisor.